ure of the city, and it was revoked by institution of the proceedings by which the city obtained the title.

I am also of the opinion that the dock department does not now, and did not at the time the license in question was given, have power to grant a perpetual one. There is no statute specially conferring such power, and an officer or department of the city government ought not to be permitted to give away such valuable rights without the sanction of the Legislature, expressed in unmistakable language.

The order appealed from should be affirmed, with $10 costs and disbursements.

---

### LINCOLN SAFE DEPOSIT CO. v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. MUNICIPAL CORPORATIONS—CONTROL OF STREETS—VAULT PRIVILEGES—REVO-
    CATION.
        Where a city gave a property owner vault privileges in a public street, and subsequently such privileges were duly revoked, the property owner's right to maintain or occupy the vaults thereafter ceased.

2. SAME—ABANDONMENT OF PROPERTY BY OWNER—REMOVAL BY CITY—LIABIL-
    ITY OF CITY.
        One who was given vault privileges in a public street, and failed to remove and abandoned his property in the vaults after notice of the revocation by the city of his license to maintain and occupy them, the city or its contractor was justified in removing the property, and, in so doing, could not be held liable as for a conversion.

3. EMINENT DOMAIN—RAPID TRANSIT ACT—APPLICATION TO PERSONAL PROP-
    ERTY.
        Rapid Transit Act (Laws 1891, p. 3, c. 4, as amended by Laws 1894, p. 1873, c. 752, § 9; Laws 1895, p. 908, c. 519, § 15; Laws 1896, p. 887, c. 727, § 5; Laws 1901, p. 1423, c. 587, § 1) § 39, providing that, for the purpose of constructing or operating the road, the board of rapid transit commissioners might acquire property by conveyance or by condemnation or other legal proceedings, and that the word "property" should be deemed to include real estate, rights, privileges, franchises, and easements, does not contemplate condemnation proceedings, or compensation for a tortious appropriation of personal property left in vaults in a street, the license to occupy which has been revoked by the city.

Action by Lincoln Safe Deposit Company against the city of New York and another. From a judgment overruling demurrers to the answer, plaintiff appeals. Affirmed on the opinion of the lower court.

The pleadings, omitting formal averments, were as follows:

#### Complaint.

(1) That at all the times hereinafter mentioned the plaintiff above named was, and still is, a domestic corporation, incorporated under the laws of the state of New York, with its principal place of business in the borough of Manhattan, in the city of New York; and the defendant, the city of New York, was, and still is, a municipal corporation, duly incorporated under the laws of the state of New York, pursuant to a charter granted by the Legislature of the state of New York, and accepted by the said defendant, and being known as chapter 378 of the Laws of 1897, and the several acts amendatory thereof, and the successor of the mayor, aldermen, and commonalty of the city of New York, hereinafter mentioned; and the defendant the Degnon-McLean Contracting Company was, and still is, a domestic corporation, duly

incorporated under the laws of the state of New York, and doing business in the borough of Manhattan, city of New York.

(2) That the plaintiff above named at all the times hereinafter mentioned was, and still is, the owner in fee simple and in possession of certain premises in the city of New York, situate on the south side of Forty-Second street, in the borough of Manhattan, in the said city, commencing at a point distant one hundred and five feet westerly from the southwesterly corner of Fourth avenue and Forty-Second street, and running thence along Forty-Second street one hundred and fifty feet.

(3) That on or about the 18th day of April, 1882, the mayor, aldermen, and commonalty of the city of New York, as it then existed, through its department of public works, in accordance with the laws of the state of New York and the ordinances of the said city, duly issued to the said plaintiff its permit for the construction of a vault adjoining and in front of that portion of its property on the south side of Forty-Second street at a point commencing one hundred and fifty-five feet west of Fourth avenue aforesaid, which said vault was to be fifteen feet in width and one hundred feet in length, and to occupy fifteen hundred square feet, and that the said plaintiff paid therefor to the said city the sum of eleven hundred and twenty-five ($1,125) dollars, and that thereafter, and on or about the 7th day of October, 1892, the said the mayor, aldermen, and commonalty of the city of New York, as it then existed, through its department of public works, duly issued to the said plaintiff its further permit for the construction of a vault adjoining and in front of that portion of its property on the south side of Forty-Second street, at a point commencing one hundred and five feet west of Fourth avenue aforesaid, which said vault was to be twenty feet in width and fifty feet in length, and to occupy one thousand square feet, and that the said plaintiff paid therefor to the said city the sum of seven hundred and fifty dollars, and which said two permits covered the entire vault area in front of and adjoining the premises of the plaintiff.

(4) That thereupon this plaintiff entered into the possession of and constructed said vaults in conformity with the laws of the state of New York and the ordinances of the city of New York in that behalf made and provided, and placed, erected, and maintained therein various boilers, engines, machinery, and other appliances for use in its business, at a cost and of the value exceeding twenty thousand dollars.

(5) That the said plaintiff continued to and did use the said vaults so constructed by it as aforesaid, and all the boilers, engines, machinery, and appliances aforesaid, in and about its said business, until on or about January 1, 1903, and between that time and July 1, 1903, during which time the said defendants entered upon the said vaults as aforesaid, and unlawfully and with force threw out, destroyed, took away, and disposed of all the said various boilers, engines, machinery, and appliances contained therein, and all the connections appurtenant thereto, being the sole property of the said plaintiff, to the plaintiff's damage twenty-one thousand nine hundred and twenty-five $25/100$ ($21,925.25) dollars.

(6) That no compensation of any kind was paid to the plaintiff by the said defendants for the said destruction, demolition, and appropriation of its said property, nor were any proceedings had at law or otherwise to acquire the ownership of the said boilers, engines, machinery, and appliances aforesaid, belonging to the said plaintiff, nor was the same removed by the said defendants under any judgment, order, or process in any proceeding whatsoever brought to acquire the said property, nor with the consent of this plaintiff; and this plaintiff, on information and belief, alleges that the said defendants sold most, if not all, of the property hereinabove referred to, and appropriated the proceeds thereof to their own use.

(7) That on or about the 8th day of July, 1903, the said plaintiff duly filed its notice of claim upon which this action is founded, and presented the same to the comptroller of the defendant the city of New York for adjustment, and that more than thirty days have elapsed since the said claim or demand was presented to the comptroller, and that he, the said comptroller, has neglected or refused to make an adjustment or payment thereof for thirty days after such presentation.

### Answer of the City of New York.

(1) This defendant denies that it has any knowledge or information sufficient to form a belief as to any of the allegations in the paragraphs of the said amended complaint designated 1, 2, 3, 4, 6, and 7, except the allegation that this defendant was, and still is, a domestic municipal corporation, and the successor of the mayor, aldermen, and commonalty of the city of New York, and except that the permits alleged in the paragraph of the said amended complaint designated 3 were issued at or about the dates in said paragraph mentioned for the construction of vaults of about the dimensions therein stated in the public street known as Forty-Second street, in front of premises in the said complaint described, in the borough of Manhattan, in the city of New York, and that the sums therein mentioned were paid to the mayor, aldermen, and commonalty of the city of New York, and except that on or about July 8, 1903, a paper purporting to be a claim on behalf of the plaintiff against this defendant was received at the office of the comptroller of this defendant, and such claim so presented has not been paid by him.

(2) This defendant denies, upon information and belief, each and every allegation in the paragraph of the said amended complaint designated 5, except in so far as the allegations therein affect or relate to any defendant herein other than the defendant the city of New York, and, as to the said allegations so excepted, this defendant denies that it has any knowledge or information of any thereof sufficient to form a belief.

(3) Further answering, for a separate defense to the amended complaint herein, this defendant alleges upon information and belief: The permits alleged in the paragraph of the amended complaint designated 3 were for the construction and occupation of vaults upon premises which were then, and during all the times in the complaint referred to continued to be, a portion of East Forty-Second street, in the borough of Manhattan, in the city of New York, the same being a public street, owned in fee simple by this defendant, in trust nevertheless that the same be appropriated and kept open for a public street, road, or a public square forever, and such permits were each of them subject to the condition that the continuance thereof should not interfere with such street or impair the use of such street by the public, and that, if so, such permits should terminate; and the said permits, in so far as the plaintiff's use and occupation thereunder of the premises therein described did, or should at any time interfere with the use of said premises as a public street, were illegal and void, and the issuance thereof were illegal and void official acts.

(4) Prior to the acts in the complaint complained of, and on or about October 30, 1902, the said permits, and each of them, terminated. The use of said Forty-Second street, and of the premises described in the plaintiff's said permits, then became necessary, and was required for the improvement of said street for a public use, pursuant to chapter 4, p. 3, of the Laws of 1891, and acts amendatory thereof, and the continuance of the plaintiff's said permits, and the plaintiff's use and occupation of the said premises thereunder, then interfered therewith and impaired the use of said street by the public; and therefore on or about said October 30, 1902, the board of rapid transit railroad commissioners, under the authority of said acts, duly notified the plaintiff that said premises were so required, and that the plaintiff's said permits were revoked, and required the plaintiff to remove all of its property from the said premises in said permits described, and the plaintiff thereupon, prior to any of the alleged acts in the complaint complained of, vacated the said vaults, and removed therefrom such of its property as it desired, and abandoned the remainder of its said property therein situated—that is to say, the said boilers, engines, machinery, appliances, and connections thereto, referred to in the paragraphs of the said complaint designated 5 and 6.

(5) All of the things alleged in the complaint to have been done by this defendant, and which are therein complained of, were done pursuant to authority of the said chapter 4, p. 3, of the Laws of 1891 of the state of New York, and acts amendatory thereof, as agent of the people of the state of New York, in and upon premises which were then and there public streets in the city of New York, owned in fee simple by this defendant, in the execution of a public work prosecuted thereon for the improvement of the same as public streets and highways of the city of New York, and for a public use con-

sistent with the uses for which such streets are held by this defendant, and the same were done in the performance of a public service of such state in which this defendant had no separate interest, and from which it, as a corporation, derived no benefit or advantage, and which was performed in the exercise of all due care and skill, and necessarily and in pursuance of a duty imposed by law for the general welfare of the community, and not otherwise.

The following is the opinion of the lower court (Leventritt, J.):

The plaintiff's vault privileges were duly revoked, and its right to maintain or occupy the vaults thereafter ceased. Deshong v. Mayor, etc., 176 N. Y. 475, 68 N. E. 880. The vaults were required for a public purpose. Sun Print. & Pub. Ass'n v. Mayor, etc., 152 N. Y. 257, 46 N. E. 499, 37 L. R. A. 788. And there can be no question, on the pleadings, of the validity of the revocation, or the authority to direct it. If the plaintiff failed to remove the property in the vaults after notice of the revocation of the license to maintain and occupy, and abandoned it, the removal by the city or the contractor was justified. It is alleged in the answer as a fact that the property was abandoned. Wiggins v. McCleary, 49 N. Y. 346. If that is so, no cause of action exists. Section 39 of the rapid transit act (Laws 1891, p. 3, c. 4, as amended by Laws 1894, p. 1873, c. 752, § 9; Laws 1895, p. 908, c. 519, § 15; Laws 1896, p. 887, c. 727, § 5; Laws 1901, p. 1423, c. 587, § 1) does not contemplate condemnation or compensation for the property alleged by the plaintiff to have been converted. Its claim is not, nor could it be, that it was illegally deprived of any property in its vault rights, as they had ceased, but that the personal property in the vaults was tortiously appropriated. The vault rights were subject to termination on notice when the street was required for a public purpose. The sole question on these pleadings would seem to be whether or not there was an abandonment. As to that, a clear issue is presented. The demurrers to the answer should be overruled, with costs to each defendant.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

S. Hoff, for appellant.

T. Connoly and G. W. Wickersham, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the court below.

---

## PEARL v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Term.   June 23, 1904.)

1. STREET RAILWAYS—INJURIES TO PASSENGER ALIGHTING FROM CAR—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a street railway company for injuries to a passenger alighting from a car, evidence *held* to show plaintiff guilty of contributory negligence.

Appeal from Municipal Court, Borough of Manhattan, Thirteenth District.

Action by Abraham Pearl against the Interurban Street Railway Company From a judgment for plaintiff, defendant appeals Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Henry W. Goddard and William E. Weaver, for appellant.

S. J. Frankenstein, for respondent.

MacLEAN, J. As he stated it, the plaintiff, being a passenger on the defendant's Madison avenue car, and desiring to see some one on